28130.  PULLEN *v.* GEORGIA STAGES INC.

DECIDED MAY 16, 1940.

*R. J. Bacon,* for plaintiff.  *S. C. Walden Jr.,* for defendant.

BROYLES, C. J.  J. K. Pullen sued Georgia Stages Inc., to recover damages for the loss of the services of his minor son, John Keaton Pullen; and the sole question presented for the determination of this court is whether the trial judge erred in sustaining the defendant's general demurrers. The substance of those parts of the petition as amended, necessary to be considered in determining the question at issue, sufficiently appears from the following statement: At about fifteen minutes after two o'clock in the afternoon, John

Keaton Pullen (who was nearly six years old) and his sister (who was "a little older") were coming from school in the town of Baconton, and were attempting to walk from the east side of State-aid road No. 3 to the west side thereof on a sidewalk or passageway which ran along the west side of the highway from the south and turned and crossed the highway just north of the Atlantic Coast Line Railroad Company's depot. While so attempting to cross the highway, John Keaton Pullen was struck and injured by an automobile (with a trailer attached) which was being driven by one Harris in a southerly direction on said highway. North of said passageway the railroad's park extended about fifty feet along the east side of said highway, and a row of trees and bushes in said park, together with a brick warehouse further north, "obscured from the view of any one crossing at this sidewalk crossing of any cars coming from the north until one should in passing from the east side of town to the west get out into the very edge of the highway . . and within three or four feet of the pavement." And "if the view was additionally and materially obstructed by the placing of an object in the highway in and adjacent to the line of trees and bushes . . it would render the crossing . . an extremely dangerous place." The defendant used as a bus station a filling-station that was located "on the west side of this highway about fifty feet north of where this sidewalk crosses the highway," and there was "ample room between the pavement and the filling-station" for defendant's buses "to . . park and let passengers off and on without obstructing the highway or impeding the view of those who cross at said . . crossing, and the . . danger of parking the buses on the east side of this highway . . has been called to the attention of Georgia Stages Inc., through its superintendent, Mr. Williams." Nevertheless, at about a quarter past two o'clock on the afternoon of March , 1939, "the [defendant's] large . . bus coming from the south . . and driven by . . Mason . . parked in said highway . . just north of the sidewalk crossing . . with its rear wheels . . within two feet of the center of said pavement and the front of the bus a little further to the east . . with its front door standing open on the east side, so that the view of any" southbound cars "was entirely cut off until a person crossing from the east to the west at said sidewalk crossing should practically reach the center

of the pavement, and the driver of a car coming from the north could not see a person crossing at said sidewalk crossing until the car . . would be almost upon the person crossing by foot at said . . crossing." Charles Harris, the driver of said southbound car, did not see John Keaton Pullen "until he got within some fifty or sixty feet" of said children, and "despite all attempts to stop his car and his putting on brakes, . . petitioner's child . . was run over and his face dragged on the pavement," and he was seriously injured in designated particulars. Had not said bus been parked as aforesaid and cut off the views of John Keaton Pullen and said Harris, as stated, "petitioner's child would not have been hurt." Harris's car "brushed the skirts that [the little girl] wore, and she escaped from similar injury only by that narrow margin of safety."

The amendment to the petition was substantially as follows: Said Harris could not turn his car to the right of the pavement, because there was a large telephone pole "right opposite to where . . said bus was parked . . and just beyond that a coca-cola sign held up by an iron post, and the ground . . slopes downward from the paved highway." With said bus parked as aforesaid, and because it was so parked, "there was left of the highway but little more than ten feet in width in which . . Harris could drive his car either to the east or the west of any one crossing at said sidewalk crossing, . . and the obstructions . . rendered the highway left for the maneuvering of an automobile . . entirely too narrow and a dangerous place, . . and said Harris . . by reason of the bus being parked as aforesaid could not see anything to the east of said bus except the hedges and trees of the said . . park, and could not see the sidewalk crossing immediately south of the . . parked bus, and could not see" said children "until he got within fifty or sixty feet of them. . . Harris immediately put on his brakes and attempted to stop his . . car with the trailer behind it, and made every possible attempt under the circumstances not to strike either of the children." He succeeded in missing the little girl, "but struck John Keaton Pullen, inflicting the injuries as aforesaid, but succeeded in stopping the . . car over the prostrate body of John Keaton Pullen after the body had been dragged only a few feet." The specifications of negligence in the petition are substantially as follows: (a)

"The parking of said bus as aforesaid . . so as to obscure the sight of any car approaching from the north from any person crossing . . said sidewalk crossing, and particularly the vision· of a person of short stature who could not see above the bushes of the railroad park along said park." (b) The parking of the bus as aforesaid "rendered the said sidewalk crossing a dangerous place." (c) The parking of the bus "within eight feet of the center of the said paved highway was illegal and a misdemeanor under the law." (d) Said bus "was parked out of the place on the west side of . . said . . highway in front of the bus station where it should have been parked." (e) The danger of parking the bus as aforesaid "had been specifically pointed out to the defendant . . and . . defendant was . . guilty of culpable and gross negligence and assumed all risks incident thereto." (f) The said bus parked as aforesaid "was a negligent and illegal obstruction in the highway that left the remaining portion too narrow for safety," and prevented said Harris "from dodging . . petitioner's said son" as he crossed the highway, and forced Harris to run over said child. (g) Said bus "remained as an obstruction on said highway an unreasonable length of time." In its last analysis, the general demurrer as amended attacks the petition as amended, (a) because it sets out no cause of action against the defendant, and (b) because the negligence alleged against the defendant was not the proximate cause of the injuries to the plaintiff's son.

In the able discussion of proximate cause in *Atlantic Coast·Line R. Co.* v. *Daniels*, 8 *Ga. App.* 775, 780 (70 S. E. 203), Judge Powell said: "If two negligent acts are so related that the first would not probably have resulted in injury if the other had not occurred, and the latter amounts to such a preponderating cause that it probably would have produced the injury even if the first negligence had not occurred, or if the author of the latter negligence, with the intermediate effects of the former negligence consciously before him, is guilty of a new negligent act which preponderates in producing the injurious effect, we say that the first negligent cause is not the proximate cause, that the intervention of the latter negligence breaks the chain of causal connection so far as juridic purposes are concerned." After stating that "a demurrer to a petition should be sustained where it appears from the plaintiff's pleading that the negligence charged against the defendant was not the proximate

and effective cause of the injury," Jenkins, P. J., speaking for this court, in *Rome Railway &c. Co.* v. *Jones,* 33 *Ga. App.* 617 (2) (127 S. E. 786), said: "The most generally accepted theory of causation is that of natural and probable consequences (*Mayor &c. of Macon* v. *Dykes,* 103 *Ga.* 847, 848, 31 S. E. 443) ; and in order to hold the ·defendant liable the petition must show either that the act complained of was the sole occasion of the injury, or that it put in operation other causal forces, such as were the direct, natural, and probable consequences of the original act, or that the intervening agency could have reasonably been anticipated or foreseen by the original wrongdoer. *Southern Ry. Co.* v. *Webb,* 116 *Ga.* 152 [42 S. E. 395, 59 L. R. A. 109] ; *Hardwick* v. *Figgers,* 26 *Ga. App.* 494 (106 S. E. 738) ; *Gillespie* v. *Andrews,* 27 *Ga. App.* 509 (108 S. E. 906)." In *Cain* v. *Georgia Power Co.,* 53 *Ga. App.* 483 (186 S. E. 229), this court applied the foregoing principles of law in affirming a judgment sustaining the general demurrer of the power company to the petition brought by Mrs. Cain against F. B. Cook and said company as joint tort-feasors in the death of her minor daughter, who was struck and killed by an automobile driven by Cook as she emerged from behind the parked bus of the power company into a street in the City of Macon. This court said: "In the present case the petition shows very clearly and plainly that the alleged intervening negligence of the defendant Cook was the proximate cause of the injury. . . It was the preponderating cause; no injury would have occurred to the plaintiff because of the passive negligence . . of the defendant power company unless the negligence of Cook, which was in no way set in motion by the act of the defendant power company, had intervened. Cook had consciously before him the negligence of the defendant power company; he was charged with a degree of care commensurate with the situation before him; had he, under the circumstances, used that degree of care (and on whether he did or did not the act of the power company had no conscious effect), it is clear that no injury would have occurred."

While the averment in the petition in the instant case that the defendant was negligent in parking its bus "within eight feet of the center of said paved highway" is futile for the reason that the provisions of the act of 1935 (Ga. L. 1935, p. 443), as contained in Code, § 68-314, have no application to streets in the corporate lim-

its of municipalities (*Payne* v. *A. B. C. Truck Lines,* 61 *Ga. App.* 36, 5 S. E. 2d, 241), we are assuming for the purposes of this decision that the defendant may have been negligent in other ways specified in the petition. However, in this case Harris, the driver of the automobile, with full knowledge that the row of trees and bushes and the brick warehouse prevented him from seeing a person approaching the highway from the east on the said sidewalk or passageway, and that such person could not be seen by him until he was well into the highway because of the parked bus, drove his automobile, with the trailer attached, towards the obviously narrowed place in the highway in such a manner that, notwithstanding the fact that he saw the children about fifty or sixty feet ahead of him, he struck the little boy and dragged him a short distance and narrowly missed the little girl. In short, with full knowledge of the dangerous situation created by the parked bus, Harris committed acts of negligence which were not set in motion by any negligence of the defendant and which were the proximate cause of the child's injuries. We therefore hold that the negligence alleged against the defendant was not the proximate cause of the injuries to the plaintiff's child, and affirm the judgment sustaining the general demurrers.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*