40415. NATIONAL UPHOLSTERY COMPANY v. PADGETT, by Next Friend.

DECIDED JANUARY 7, 1964—REHEARING DENIED JANUARY 22, 1964.

*Sharpe & Sharpe, T. Ross Sharpe, T. Malone Sharpe, Marvin Hartley, Jr.,* for plaintiff in error.

*Barrie L. Jones,* contra.

FELTON, Chief Judge. 1. The first two special demurrers attack the allegations of paragraphs 19 and 20 of the petition as amended, which allege the plaintiff's reduced earning capacity as a result of the injuries sustained. The plaintiff in error contends that these allegations are speculative and have no supportable basis in fact nor a proper foundation therefor, it not being stated how or in what manner the plaintiff will have a permanent partial disability, nor facts to justify the setting of a definite monetary loss therefrom. Concerning the contention that it is not shown in what manner the plaintiff will have a permanent partial disability, it is alleged that the plaintiff has a depressed, concave fracture on the front of his head which is soft and pulpy and which results in painful headaches following any bodily exercise and in mental confusion such as to cause him to forget incidents and facts recently learned, and causing him to be vague and uncertain in conversations with others, halting in speech, and unable to "rationalize" as well as previously. This, as well as the other alleged injuries, was alleged to be permanent in nature, for which damages for pain and suffering are sought. The injuries alleged are sufficient to support the allegation of a permanent partial disability.

We will now consider the contention that the allegation as to the basis of the amount of the plaintiff's reduced earning capacity was speculative and unclear as to the nature of the damages sought. The statement that "[t]here is only one *compensation* for permanent injury as related to ability to labor, earning capacity, or future lost earnings, but that one compensation in the majority of cases involves all three elements, and the elements are arrived at in a different manner because of the exigencies of the case," does not mean that there may not be recovery for pain and suffering due to loss of ability to labor and loss of earning capacity resulting in pecuniary loss determined from sufficient evidence. *Hunt v. Williams,* 104 Ga. App. 442, 450 (122 SE2d 149). The division of compensation into elements (three in the *Hunt* case, supra) might be clarified by

using only two major divisions, namely: (a) pain and suffering caused by loss of or decreased capacity to labor (i.e., enforced idleness, partial or complete), and (b) lost future earnings. For the purpose of proof, element (b) might be subdivided, as was done in *Hunt v. Williams,* supra, into (1) decreased earning capacity resulting in pecuniary loss (which must be proved by evidence from which the jury "can arrive at, estimate, or reasonably infer" a pecuniary value for the loss) and (2) loss of definite earnings that would have been received in the future but for the injury (which is determined from evidence as to what plaintiff's actual future earnings would have been, e.g., a contract to work at a given salary for a certain period in the future). However, for purposes of *pleading,* with which we are concerned in the case at bar, allegations of decreased earning capacity would suffice to include both (1) and (2) above, with the evidence adduced determining the basis and the extent of the recovery. Even if the plaintiff should produce no evidence from which a jury could determine a pecuniary value for loss of his earning capacity, the courts have approved of including damages for decreased ability to labor as an element of pain and suffering to be measured by the enlightened conscience of the impartial jurors in such a case. *Langran v. Hodges,* 60 Ga. App. 567 (4 SE2d 489); *City Council of Augusta v. Drawdy,* 75 Ga. App. 543, 549 (43 SE2d 569); *Hunt v. Williams,* p. 451, supra. This is especially true in the case of a plaintiff such as the present one, who was a senior in high school and had never held a full-time job. The Supreme Court has approved the following charge as a correct statement of the law: "Where the injured party is too young to have selected an avocation, [vocation], or to begin to illustrate, by his labor, his wage earning capacity, the matter of the amount of damages for a permanent injury rests in the sound discretion of the jury, to be exercised in the light of their common observation and experience, and aiming to compensate the plaintiff for the injury actually sustained." *Western &c. R. Co. v. Young,* 81 Ga. 397 (4), 411 (7 SE 912, 12 ASR 320). The plaintiff in this case, however, has waived his reliance on the enlightened conscience of the jury in the determination of the amount of his damages for impairment of earning capacity

by his allegation of the pecuniary value of his earning capacity and the amount of its diminution. The allegation of the promised job, although speculative in the sense that it was not alleged whether the job was to have been permanent or merely temporary, was sufficient to support the prayer for damages for reduced earning capacity. The pleadings, therefore, were sufficient as against the demurrers, and the court did not err in overruling the demurrers.

2. The remaining special demurrer attacks paragraph 22 (f) of the petition as amended, which alleges, as a particular of the defendant company's negligence, its "parking such truck so that the left portion thereof, and particularly the left rear corner of the body and tailgate was eleven (11) feet from the center line of the State-aid road or highway known as U. S. Highway No. 1, the same being negligence per se and in violation of *Code Ann.* § 68-1670 (15) of the 1933 Code of Georgia, Annotated." Plaintiff in error demurred to this allegation on the basis that it was an attempt "to impose upon the defendant a degree or burden of care superior to that provided by law, stating that the defendant is guilty of negligence per se, said allegation being contrary to the applicable and controlling laws of this State, improper and prejudicial." *Code Ann.* § 68-1670 (a) (15) provides: "It shall be unlawful for any person to stop or park any automobile, truck, tractor, trailer, or other motor vehicle, or horse-drawn vehicle on or along any State-aid road or highway, unless such vehicle be placed so that it is at least 12 feet removed from the center line of such State-aid road or highway; and such vehicle shall be so parked that no portion thereof shall be within 12 feet of the center line of such State-aid road or highway." Former *Code* § 68-314 (which had an 8 foot requirement) was held not to have included streets within the corporate limits of municipalities, even though such streets formed part of a State-aid road or highway, thus leaving the regulation of parking within municipalities to the local authorities. *Payne v. A.B.C. Truck Lines Inc.,* 189 Ga. 112 (5 SE2d 421); s.c., 61 Ga. App. 36 (2) (5 SE2d 590); *Pullen v. Georgia Stages, Inc.,* 62 Ga. App. 592, 596 (9 SE2d 104); *Mishoe v. Davis,* 64 Ga. App. 700, 702 (2) (14 SE2d 187). *Code Ann.*

§ 68-1606, which was enacted in 1953, subsequently to the above cited cases, made the provision of *Code Ann.* § 68-1670 (a) (15), above, applicable and uniform throughout the State and in all political subdivisions and municipalities therein, further providing that "no local authority shall enact or enforce any ordinance, rule, or regulation in conflict with the provision of this law unless expressly authorized herein." It thus appears that the legislature intended, by the enactment of *Code Ann.* § 68-1606, to counteract the effect of the earlier decisions. Should this provision be undesirable or compliance therewith be impracticable, the remedy lies in legislative amendment rather than in judicial ignoring of the plain wording of the statute. The defendant company's truck is alleged to have been parked with its right-hand side one foot from the curb and its left-hand side 11 feet from the center line and 9 feet from the curb. The petition shows, then, that it was possible, albeit difficult, to have parked the 8 foot wide truck with both or all of its right-hand tires touching and parallel with the curb, so as to leave the remaining 12 feet of the 20 foot wide lane of the roadway clear, as required by *Code Ann.* § 68-1670 (a) (15). Although it may not be necessary in this case to decide how compliance could be made with *Code Ann.* § 68-1670 (a) (15) in the situation wherein the roadway is not wide enough to permit parking of the vehicle so that the left-hand wheels are at least 12 feet from the center line, it might be noted in this connection that the Supreme Court has held that, even in an emergency stopping situation, this statute does not cease to be applicable merely because there is insufficient room, unless there is no other available space to which the driver, in the exercise of ordinary care and diligence, may resort for parking in accordance with the law as written. *Kelly v. Locke,* 186 Ga. 620 (2) (198 SE 754).

"In order for the violation of some statutory duty to be negligence per se, the person claiming it to be such must be within the class for whose benefit the statute was passed." *Huckabee v. Grace,* 48 Ga. App. 621 (2, a) (173 SE 744). This court has construed the former law, under which the required distance from the center line was 8 feet, to be for the benefit of all persons who might meet or follow the parked vehicle, its purpose

being to avoid collisions by persons coming behind the parked vehicle and those meeting it. *Bozeman v. Blue's Truck Line, Inc.*, 62 Ga. App. 7, 9 (7 SE2d 412). The plaintiff was following the parked vehicle, and it seems reasonable to assume that another purpose of the Act was to avoid collisions by persons coming behind the parked vehicle *with the parked vehicle*, as well as with an oncoming vehicle. The plaintiff was thus in the class for whose benefit the statute was passed, therefore the alleged violation of the statute was negligence per se as to the plaintiff. The particular ground of the demurrer attacking the allegation of negligence per se was therefore without merit and properly overruled.

3. We come now to a consideration of the general demurrer to the petition as amended. The two principal particulars of the defendant company's negligence alleged are (1) failure to display lights, as required by *Code Ann.* § 68-1710 (b), and (2) failure to park at least 12 feet from the center line, as required by *Code Ann.* § 68-1670 (a) (15). With regard to the lights, the statute requires certain described lights "[w]henever a vehicle is parked or stopped upon a roadway or shoulder adjacent thereto, whether attended or unattended, during the hours between a half hour after sunset and a half hour before sunrise and there is not sufficient light to reveal any person or object within a distance of 500 feet upon such highway." This section is made applicable to municipalities, as are the sections regulating parking distances, by *Code Ann.* § 68-1606. The intent of the legislature that the above quoted provision of *Code Ann.* § 68-1710 should be applicable within municipalities is further evidenced by the provision of subsection (a) of that section, which says, in effect, that a lawfully parked vehicle upon a *street* or highway need not display lights where the same 500 foot visibility is present. The petition alleged that the collision occurred at about 9:25 p.m., that the visibility was only about 400 feet and that the truck had no lights burning which were visible from the rear. This was a sufficient allegation, if supported by evidence, to make an issue for the jury as to whether or not the defendant company's negligence in not having the required lights was the proximate cause or a concurring proximate cause of the collision.

With regard to the failure to park 12 feet or more from the center line, the petition alleges that the point of impact extended 18 inches inboard from the truck's inboard side, which side was 11 feet from the center line. This allegation shows that even if the truck had been parked the required 12 feet from the center line the automobile would still have collided with 6 inches of the truck's left-hand side, therefore it was the failure to display lights, rather than the failure to park 12 feet from the center line, which comprised the actionable negligence of the defendant company. See *Southern Bell Telephone &c. Co. v. Spears*, 212 Ga. 537 (93 SE2d 659).

The alleged facts do not show that the plaintiff, in the exercise of ordinary care, could have avoided the consequences of the negligence of the defendants, so as to bar his recovery. It was alleged that the weather was raining, foggy and misty, that there was a maximum visibility of about 400 feet, that the truck had no lights visible from the rear and that the dark colored canvas thereon reflected no light, that the lane in which the automobile was being driven was 20 feet wide and that although the plaintiff was looking ahead, he did not see the truck. The only alleged fact which might have put the plaintiff on notice of any danger was that the driver "suddenly" accelerated the automobile's speed to the excessive speed of 40 m.p.h. Even if the plaintiff was aware that the automobile was being driven in excess of the speed limit, this in itself would not require him, in the exercise of ordinary care, to anticipate the presence of an illegally parked and unlighted vehicle and give warning thereof, especially since it is alleged that he did not see it and, further, that, under the alleged circumstances, he probably could not have seen it in time to give a warning. Even if it had been alleged that he had seen the truck, it would still be a question for the jury as to whether in the exercise of ordinary care he should have felt it necessary to warn the driver and, if so, at what point.

From the above it follows that the court did not err in overruling the special and general demurrers to the petition as amended.

*Judgment affirmed. Eberhardt and Russell, JJ., concur.*