## 68230. MICHAELS v. KROGER COMPANY.
### (322 SE2d 903)

QUILLIAN, Presiding Judge.

Sharon Michaels, the plaintiff, brought this action against the defendant Kroger Company as a result of a slip and fall at the defendant's store on the evening of August 20, 1979. Ms. Michaels was familiar with the defendant's store and proceeded directly to the area where the item she wanted was located. After she had turned into an aisle and made a few steps she fell. She said: "My foot slipped out from under me . . . I went up in the air and hit on my entire back and head." Her boyfriend and an assistant manager helped her to a chair a few feet away from where she fell. She waited a few minutes in the store and then went home. When she arrived at her apartment, it was about 1:15 a.m. She said she had a headache. The next afternoon, August 21, she went to the hospital and complained of headache, backache, and neck pain. She was examined, x-rayed, given a shot for pain and a tetanus shot, and referred to a doctor. Eventually she was seen by several doctors and hospitalized for 32 days.

When Ms. Michaels was assisted to a chair in the Kroger store after the incident, it was observed that her shoe had moisture on it. Her boyfriend and the assistant manager found two puddles of water approximately the size of your hand near the cash registers and close to where Ms. Michaels had walked when she entered the store. Terry Lowe, a night cashier at Kroger, testified that she had been mopping the floor in the area near her cash register but was not aware she had left any water on the floor until she saw the puddles after the incident. She thought the water must have come from her mop bucket when she was wringing out the mop. She heard Ms. Michaels say that she was "okay" and then she went back to her work.

Ms. Michaels testified as to her prior jobs and income. She had worked as a file clerk for Prudential for four years and when she left she was earning $94 per week. During that same time she also worked for Avon and her income varied from as little as $50 per month to as much as $400 per month. After she married she worked at a health food store with average earnings of $100 per week. After her divorce she worked at a furniture sales store and did interior design work. She also sold jewelry. Her grandmother died and left her an inheri-

tance and she started doing "free lance modeling." She had been selected to be on Mademoiselle's Career Merchandising Board when she lived in Florida and had modeled for Prudential. The trial court refused to permit evidence of her earnings in 1979 earned by "free lance modeling" but permitted counsel to perfect the record. She testified that she worked 2 or 3 days for a Dental Convention at $100 per day, and modeled fashion clothing at the Merchandise Mart in a couple of shows at $35 to $45 per day. She modeled sportswear and jeans for a different company for $40 to $45 per day. In summary, she worked 10 shows in 1979 prior to her injury, from two to three days each, with compensation from $35 to $100 per day. She had purchased an airline ticket to New York and had made several appointments in New York to see about getting into a career of dress designing or some related type of business dealing with clothing. Following her injury, Ms. Michaels suffered hair loss and loss of weight. She normally weighed from 110 to 120 pounds and her weight after her injury fell to 93 to 95 pounds and she could not gain any additional weight. She presented pictures of herself before the incident in which she was injured. One of her expert witnesses testified that he would not hire her as a model because of her present appearance. Plaintiff also presented the testimony of a doctor of chiropractic, who was also a specialist in disability ratings. He was of the opinion that she had been permanently injured because of a torn ligament and cervical spine injury. She has a "25 percent whole-man disability" which is permanent and will degenerate further. Her ability to work has been diminished and she cannot do any type of work that has constant motion of the neck or places exceptional stress to the neck, i.e., "typing, housework, running a vacuum cleaner . . ." Any type of work that has "a stressed range of motion is going to cause her to have headaches, neck and shoulder pain . . ." A medical doctor diagnosed her physical condition as "post concussion syndrome," causing nausea, occasional vomiting, headache, loss of weight, abdominal pain and constipation. The doctor who examined her after her injury was of the opinion that her x-rays showed no injuries to the neck, back or shoulder. He saw nothing which would indicate any permanent disability.

The plaintiff attempted to introduce the testimony of an economist and of the plaintiff as to her diminished earning capacity which would include loss of earnings as a model. The trial court ruled out such evidence. Defendant's counsel argued that such information had been requested in interrogatories and the answer had been "None." The court also ruled that "the best evidence rule, which earnings would be the financial records or W-2 forms or income tax returns or something else other than off the top of [the plaintiff's] head. This is the reason why I indicated to you I do not think you are going to be able to lay sufficient foundation. You can lay it for pain and suffering,

loss of wages or diminished earning capacity as pain and suffering, but for special damages it requires such particularity and such certainty that generally you cannot unless you have been working in that job and had that job interrupted, but when it is some situation that is spasmodic as her work history and this is the thing, you put in a work history that goes back over a number of years and it is more remarkable for the absence of working than it is for working and that's why it makes it speculative . . . You cannot, from what you have produced so far, satisfy requirements for particularitiness [sic] for it as a special damage . . . Because of the surprise and this is a pertinent aspect of the case and the pretrial order did specifically require the divulging of that information and the discovery had requested it. The Court would exclude it for that reason and that reason only, separate and apart from the fact that it does not adequately meet the requirements [pertaining to specificity] . . ."

Plaintiff appeals from a judgment of $3,000 in her favor. *Held*:

Plaintiff enumerates as error the removal from consideration of the jury, evidence, argument, and a charge on diminished future earning capacity as an item of damage. Her complaint sought recovery of damages for mental and physical pain and suffering, medical expenses, and lost earnings. The pretrial order required that plaintiff specify what general and special damages were sought, including lost wages — past and future, and any percentage of permanent disability and diminution between past and present earnings, or future loss of wages. Plaintiff's response to the pretrial order showed general damages of pain and suffering, both physical and mental, and special damages of medical expenses, past and future, and she sought no lost wages — past or future. However, plaintiff sought and the trial court permitted an amendment to the pretrial order, in which she claimed "a temporary total disability and a permanent partial disability as a result of this incident and is thus claiming pain and suffering for the permanent as well as diminished future earning capacity for said permanent disability. The exact amount can best be developed at trial."

Prior to trial, defendant deposed plaintiff and explored her work history. Her prior response to defendant's interrogatories had listed temporary jobs in "shows at the Furniture Mart, World Congress Center, the Apparel Mart and the Merchandise Mart." However, at that time plaintiff was not seeking damages for lost wages or diminished earning capacity and so informed defendant, but added that if her records could be located they would be made available. During an exchange of remarks in court, plaintiff's counsel stated to the court that such information had been made available to defendant's counsel before trial. Defendant made a qualifying remark but the issue was not fully explored.

The developing law in Georgia on the issue of damages for a per-

manent injury which had diminished the victim's ability or capacity to earn money has been marked by a curious paradox. The general law of damages is that " '[w]here a party sues for damages, he has the burden of proof of showing the amount of loss in a manner in which the jury or the trial judge in nonjury cases can calculate the amount of the loss with a reasonable degree of certainty. An allowance for damages cannot be based on guesswork.' " *Lester v. S. J. Alexander, Inc.*, 127 Ga. App. 470, 471 (193 SE2d 860). However, as a result of infancy, or coverture — prior to 1943 (see Ga. L. 1943, p. 319; Code Ann. § 53-512 — repealed by Ga. L. 1959, pp. 466, 492), those plaintiffs had no legal earnings even though the victim may have suffered a permanent injury which diminished his or her earning capacity. An infant seldom had any history of earnings, and any earnings the wife brought into the marriage were the property of her husband. *Powell v. Augusta &c. R. Co.*, 77 Ga. 192, 200 (3 SE 757). Legal fiction was resorted to so that where an injured plaintiff had no prior earnings, and his or her "capacity to labor" was permanently impaired "such deprivation or impairment can be classed with pain and suffering . . ." *Atlanta St. R. Co. v. Jacobs*, 88 Ga. 647, 652 (15 SE 825). Thereafter, a dichotomy arose, where a plaintiff suffered permanent impairment of ability to work, if there was no prior history of earnings or they could not be proved with reasonable certainty, the diminished "ability to labor" was compensable as an element of "pain and suffering," and the measure of damages was the enlightened conscience of the jury. *Atlanta & West Point R. Co. v. Haralson*, 133 Ga. 231 (3) (65 SE 437). If there was a prior history of earnings and "permanent impairment of earning capacity" damages were recoverable as a separate item where such diminution could be proved with reasonable certainty. *Atlantic Coast Line R. Co. v. Anderson*, 35 Ga. App. 292 (4) (133 SE 63).

This Court discussed this anomaly in *Jones v. Hutchins*, 101 Ga. App. 141 (113 SE2d 475) and found that "[t]he true rule distilled from the above cited older cases . . . is that [where] the plaintiff is entitled to compensation for the injury received; that where the injury is permanent and affects his *ability to labor and earn money* this also should be compensated for; that where there is no evidence from which the amount of earned money which may be lost over the remaining lifetime is in evidence the amount is in the enlightened conscience of the jury and *may* be classified with pain and suffering; that where there is evidence from which the pecuniary value of the loss may be estimated this should be reduced to its present cash value; that where there is evidence that the plaintiff is earning and will continue to earn money and that his earning capacity has been diminished, an award may be based on percentage of diminution of earning capacity . . . Finally, it is the opinion of this court that *wherever*

*there is evidence of the pecuniary value of the plaintiff's earning capacity at the time of the injury coupled with evidence of the nature and extent of the diminution of that capacity the jury may arrive at a reasonable and just compensation for impairment of earning capacity . . .* Based on evidence of what the plaintiff was able to do before and after the injury, the nature and percentage of permanent impairment, and the value of the services before the injury, a jury may make an award as compensation for diminished earning capacity, whether or not the evidence establishes with any exactitude the lost future earnings." (Emphasis supplied). Id. 147-149.

We re-examined this issue in *Hunt v. Williams,* 104 Ga. App. 442 (5) (b) (122 SE2d 149) and held that "[a]n injured plaintiff may recover for decreased capacity to labor as an element of pain and suffering, and also for decrease in earning capacity when there is evidence from which the jury can arrive at, estimate, or reasonably infer a pecuniary loss for the decrease in earning capacity."

Hence, if there is evidence from which the jury could "estimate, or reasonably infer a pecuniary loss" for the decreased earning capacity, the trial court should have permitted argument and charged on the issue. The trial court's refusal to permit the plaintiff and her economist to testify was based on: (1) plaintiff's testimony was not the best evidence of her earnings, (2) defendant was surprised and plaintiff had not produced the testimony in compliance with the pretrial order, and (3) such evidence did not meet the requirement for reasonable certainty in proving damages.

There was evidence as to what plaintiff had earned in her four years with Prudential ($94 per wk.), as an Avon saleslady ($50 to $400 per mo.), health food store ($100 per wk.), and in the first seven months of 1979 prior to her injury, 10 modeling jobs lasting from 2 to 3 days each at $35 to $100 per day, and there was evidence that at the time of this incident she had purchased an airline ticket to New York and had made appointments in New York to pursue a career related to her prior modeling.

1. The trial court erred in excluding the evidence of plaintiff's earnings on the ground that the best evidence would be her income tax returns or a W-2. "An objection based on the best evidence rule is ineffective where the essential fact to be proved is neither the existence or content of a writing but the existence of an independent fact." *Dorminey v. Harvill Machine, Inc.,* 141 Ga. App. 507, 508 (233 SE2d 815); accord *Klem v. Southeast Ceramics,* 142 Ga. App. 610, 611 (236 SE2d 694); *Peterson v. Lott,* 200 Ga. 390 (1) (37 SE2d 358); *Merrill Lynch &c. v. Zimmerman,* 248 Ga. 580, 581 (285 SE2d 181). The fact in issue was the amount earned by plaintiff during the year 1979. The contents of a writing were not in issue.

2. The pretrial order "controls the subsequent course of the ac-

tion" (Code Ann. § 81A-116 (b); now OCGA § 9-11-16 (b)), and when modified, as it was here, to include the new issue of "permanent total disability . . . thus claiming . . . diminished future earning capacity for said permanent disability. The exact amount can best be developed at trial," the amended order controlled the subsequent course of the action. Accordingly, following the date of the amended pretrial order the defendant was placed on notice that plaintiff intended to place in issue and prove "diminished future earning capacity" which is a term of art signifying that past earnings must be proved with such specificity that lost future earnings can be computed with reasonable certainty. See *Wright v. Lail*, 219 Ga. 607, 609 (135 SE2d 418); *Leggett v. Benton Bros. &c. Co.*, 138 Ga. App. 761, 765 (1) (227 SE2d 397). Plaintiff's answer to defendant's interrogatories had mentioned her work at "the Furniture Mart, World Congress Center, the Apparel Mart and the Merchandise Mart," and defendant had explored plaintiff's job history in a deposition. Plaintiff's counsel stated in court that he had supplied defendant's counsel with prior earnings data and defendant's response was partially negative but the matter was not amplified. We find the pleadings were enlarged by the amended pretrial order to include the issue of diminished earning capacity and all that the term includes, i.e., prior earnings, percentage of diminished capacity, and lost future earnings. See *Nat. Upholstery Co. v. Padgett*, 108 Ga. App. 857 (1) (134 SE2d 856). Such evidence was not relevant under the original pretrial order but was admissible under the amended pretrial order.

3. The last issue is whether or not the evidence offered was sufficient to support a charge on the issue of diminished earning capacity. We find that it was. The plaintiff's work history showed that she had worked in several different jobs, from a file clerk, saleslady, manager of a health food store, and model — and what amount she had earned in each of these jobs. There was evidence from which a jury would have been authorized to find that during the first seven months of 1979 she worked as a model in 10 different jobs from 2 to 3 days each, with a salary of $35 to $100 per day, and planned to continue in a similar occupation. The jury was also authorized to find that her appearance had deteriorated as a result of the injury received in her fall in the defendant's store. Photographs documented her appearance before and after the injury. This evidence was sufficient to raise the issue of and authorize a charge on the subject of decreased earning capacity.

The general rule that the amount of damages must be proved with a reasonable degree of certainty and cannot be based on guesswork does not mean that only a plaintiff who works on an everyday basis and on the date of the injury can prove a diminished earning capacity. See *Atlanta Metallic &c. Co. v. Hollingsworth*, 107 Ga. App.

594 (7) (131 SE2d 61). Nor does the rule mean that one who works intermittently cannot recover for diminished earning capacity, i.e., an artist, sculptor, professional athlete, author, actor, dancer, singer, musician, or even a lawyer.

Generally all future earnings or diminished future earnings are uncertain and difficult of ascertainment (see 25 CJS 685-686, Damages, § 28), but this does not mean that a plaintiff should be denied a recovery. Prior decisional authority requires only that there must be evidence from which the jury can estimate, or reasonably infer the loss or decrease in earning capacity. *Hunt v. Williams*, 104 Ga. App. 442 (4), supra. Future earning capacity "is in its nature extremely speculative, because, as is frequently pointed out, it is also subject to job availability, economic cycles, desire to work, sickness, old age, necessity for gainful employment, changing labor requirements, and a host of other considerations." *Jones v. Hutchins*, 101 Ga. App. 141, 148, supra. On numerous occasions we have found the standard to authorize a charge on this issue to be that where there is evidence to show plaintiff's capacity to labor and earn money has been permanently impaired, and there was evidence of his earnings before the injury (not continuous employment), the nature and extent of his disability, a jury was authorized to award damages for diminution of earning capacity. *Jones v. Hutchins*, 101 Ga. App. 141, 147-149, supra; *Atlantic Coast Line R. v. McDonald*, 103 Ga. App. 328 (2) (119 SE2d 356); *Hunt v. Williams*, 104 Ga. App. 442 (4), supra; *Atlanta Metallic &c. Co. v. Hollingsworth*, 107 Ga. App. 594 (7), supra; *McDuffie County v. Rogers*, 124 Ga. App. 442 (3) (184 SE2d 46); *Parsons v. Harrison*, 133 Ga. App. 280 (6) (211 SE2d 128); *Ga. Farmers Market Auth. v. Dabbs*, 150 Ga. App. 15 (8) (256 SE2d 613).

The trial court erred in excluding the plaintiff's evidence on diminished earning capacity and her earnings as a freelance model in 1979, and refusing to charge on this issue which was contained in the amended pretrial order.

*Judgment reversed. Birdsong and Carley, JJ., concur.*

DECIDED SEPTEMBER 14, 1984 —
REHEARING DENIED SEPTEMBER 28, 1984

*Gerald P. Word*, for appellant.
*Wade K. Copeland, William E. Zschunke*, for appellee.