Argued January 10, affirmed April 26, 1973

. MAY, *Respondent, v.* PORTLAND JEEP, INC.,
*Appellant.*
509 P2d 24

*Edward H. Warren,* Portland, argued the cause for appellant. With him on the brief were Hershiser, Mitchell & Warren, Portland.

*Mark McCulloch,* Portland, argued the cause and filed a brief for respondent.

HOLMAN, J.

This is a products liability action brought under

Restatement (Second) of Torts § 402A for damages suffered as a result of injuries inflicted in a one-vehicle accident. Plaintiff claims his injuries were caused by a defective vehicle which was sold to him by defendant. Defendant appealed from a judgment for plaintiff which was entered pursuant to a jury verdict.

Because plaintiff received the verdict, the facts will be recounted in a manner as favorable to him as the evidence will permit. Plaintiff purchased from defendant a new Jeep upon which was installed a roll bar. Thereafter, while driving the vehicle, plaintiff upset it upon a sand dike adjacent the Columbia river. He attempted to climb the landward side of the dike with five passengers in the Jeep, but became bogged down because of the loose sand. Two of his passengers disembarked, and plaintiff made a second attempt which was successful. The momentum carried the Jeep across the top of the dike and the vehicle started down the other side at a speed of from eight to ten miles per hour. The descent was much steeper on the river side than plaintiff had anticipated, for, on the way down, the front end of the Jeep buried itself in the sand and the vehicle flipped forward, landing upside down.

The roll bar had been installed by bolting it through the tops of the wheel wells which covered the rear wheels. The wheel wells were welded to the sides of the body by spot welds. The pressure of the impact of the overturning vehicle tore bits of metal from the body at the points where the wheel wells were spot welded to it. As a result, the wheel wells collapsed upon the tires of the vehicle, bringing the roll bar down with them.

The roll bar came down across the back of the neck of plaintiff, who was strapped into his seat with a seat belt, and the impact thrust his head forward, causing his face to be pinned against the steering wheel while his head rested upon the ground. He received injuries to his teeth, mouth, neck, back, chest, and one leg.

■ Defendant first contends the trial court erred in failing to grant its motion for a directed verdict because there was insufficient proof that the vehicle was in a defective condition and unreasonably dangerous. An engineer called by plaintiff testified that the roll bar should have been capable of withstanding the load caused by the vehicle's rolling over in the manner recounted by plaintiff. The engineer also testified that the support for the roll bar could have been increased by making continuous welds where the wheel wells joined the body or by bolting the angle irons, which supported the bases of the roll bar, to the sides of the vehicle as well as to the wheel wells. Bolt holes, although unused, had been provided in the angle irons for that purpose. This evidence, together with evidence of the purpose of a roll bar, was sufficient for the jury to find that the vehicle was in a defective condition and was unreasonably dangerous. There was adequate evidence that the roll bar did not perform its intended function.

■ As an additional ground for its nonsuit, defendant contends there was insufficient evidence that plaintiff's injury was caused by the collapse of the roll bar. Defendant argues that there was no evidence from which a jury could reasonably conclude that plaintiff's injuries probably would not have occurred in the absence of the claimed defect. Plaintiff's testi-

mony concerning what happened at the time of the accident was as follows:

"Q Now, Mr. May, after the jeep rolled over, as you have described it, what do you recall next?

"A Well, I was unconscious about five or ten minutes and, when I came to, I was bundled up underneath the jeep, still strapped in my seatbelt. I managed to get my seatbelt undone. I got dug out from under the jeep and went to see if everybody else was all right.

"Q Were you located in an upside-down position?

"A Yes.

"Q Where was the roll-bar?

"A It was on the back of my neck. I was pinned between the steering wheel and the top of the roll bar.

"Q Did it have you squeezed?

"A The top of my head was on the ground, my face in the steering wheel and the roll-bar on the back of my neck.

"Q Did you cause any physical damage to the steering wheel when you struck it, Mr. May?

"A Yes, it broke the steering wheel. I had to replace it."

From the above narration of what occurred, we believe a jury could reasonably conclude that a major portion of plaintiff's injuries would not have occurred in the absence of the collapse of the bar. There is no way of determining, of course, what the exact extent of plaintiff's injuries would have been had the roll bar not collapsed. However, we allow juries to make somewhat similar inexact determinations, such as the extent of pain and suffering and its value in money. We do so because we believe such pain and suffering should be compensable, and there is no way of determining its

extent and value other than to allow the jury to use its best judgment. The only alternative in this case is to say that plaintiff probably was additionally injured by the collapse of the bar, but that, because we cannot determine exactly what his injuries would have been if it had not collapsed, he cannot recover at all. This is not an acceptable alternative, and it is usual to allow the jury to use its judgment in similar inexact situations. It was proper to allow the jury to make its best estimate of that portion of plaintiff's injuries attributable to the collapse of the bar.

This is a different situation from that in *Whipple v. Salvation Army,* 261 Or 453, 495 P2d 739 (1972), where there was no evidence from which it could be concluded that *any* injury probably resulted from defendant's negligence.

There is a line of cases which hold that a manufacturer is not responsible for injuries which would not have been as severe as they were had the manufacturer made the vehicle stronger. *See Evans v. General Motors Corporation,* 359 F2d 822 (7th Cir), *cert. denied,* 385 US 836, 87 S Ct 83, 17 L Ed 2d 70 (1966). It is doubtful that the holding in these cases represents a majority view, but, in any event, they are not applicable to situations where the defect is in equipment, the sole purpose of which is to protect occupants from injury in case of accident.

■ It is true that plaintiff alleged an injury to his leg and that it is impossible from the facts in this case to say that it is more probable than not that the leg was injured to any extent because of the collapse of the roll bar. It is our opinion that the allegation of such injury should not have been submitted to the jury. However, we also believe that it did not materially

affect the amount of the judgment because the evidence shows that the only injury to the leg was a bruise which disappeared within a week.

■ The next assignments of error relate to the admission of evidence and permission given to plaintiff to amend his complaint during trial. The complaint upon which plaintiff went to trial had two allegations of defect in it: 1) the vertical part of the support angle irons had not been bolted to the side of the vehicle, and 2) there was a weakness in the metal body structure of the vehicle which permitted the metal to puncture and tear. During the trial, over defendant's objection that there was no allegation to sustain it, the court allowed plaintiff to introduce testimony that continuous welds, rather than spot welds, attaching the wheel wells to the body would have provided additional support for the roll bar. Thereafter, the court allowed plaintiff to amend his complaint to allege that the welding of the sheet metal of the vehicle was inadequate to support the force applied.

Defendant argues that the court erred in the admission of the evidence and in subsequently allowing the amendment to conform to the proof. The assignments are not well taken because the original allegation of a weakness in the metal body structure was sufficient to justify the admission of the evidence, and defendant was not harmed by the subsequent, though unnecessary, amendment.

■■ It is also contended by defendant that the trial court erred in submitting to the jury any claim for wages lost by plaintiff which were alleged in plaintiff's complaint to have totaled $472. There was no evidence that plaintiff lost any wages since it was shown he was operating his own business and was not working

for wages. Plaintiff contends the matter was not properly raised, but we disagree because it was pointed out to the trial court that plaintiff was working for himself. There was evidence that it was necessary for plaintiff to pay others $472 to do the work which he would have done had he not been incapacitated by the accident. Such an expense is a proper item of damages, but it was not properly pleaded in a technical sense under an allegation of loss of wages. However, we believe no reversible error was committed because it was clear to everyone, including the jury, that the allegation was intended to refer to wages which plaintiff would not have had to pay had he not been injured. Plaintiff's testimony and his payroll sheet which was introduced in evidence make clear what was intended, and no one was misled.

The judgment of the trial court is affirmed.