S92Q0580. POLSTON v. BOOMERSHINE PONTIAC-GMC
TRUCK, INC. et al.
(423 SE2d 659)

BENHAM, Justice.

This case comes to us as a certified question from the United States Court of Appeals for the Eleventh Circuit. The facts are fully set out in the Eleventh Circuit's opinion, and those pertinent to our consideration are as follows: After receiving numerous severe injuries in a collision between her car and another, Polston sued the driver of the other car, several automobile dealers, and General Motors Corporation (GMC), which manufactured her car. The manufacturer's asserted liability was based on alleged design defects which Polston contended enhanced the injuries she received in the collision. At trial, the U. S. District Court for the Northern District of Georgia ruled that Polston had the burden of showing both the existence and the extent of enhanced injuries, and granted GMC a directed verdict, finding that Polston had failed to present sufficient evidence of either existence or extent so as to present a jury question. The Eleventh Circuit disagreed in part with the District Court's holding, finding that Polston had produced sufficient evidence of the existence of enhanced injury, agreed with the District Court that Polston had not proved the extent of the enhanced injuries, and disagreed with the District Court's assignment of the burden of proof regarding damages. Noting that there is a split of authority on this issue and that Georgia case law does not address it, the Eleventh Circuit certified to this court the following question:

Under Georgia law, in a crashworthiness or enhanced injury case, does the plaintiff bear the burden of specifically apportioning damages between the striking driver and the manu-

facturer or does the burden of apportionment fall on the defendants? In other words, what is the burden of proof on each party in a crashworthiness or enhanced injury case under Georgia law?

The split of authority to which the Eleventh Circuit referred consists of two lines of cases, one headed by *Mitchell v. Volkswagenwerk, A.G.*, 669 F2d 1199 (8th Cir. 1982), and *Huddell v. Levin*, 537 F2d 726 (3rd Cir. 1976). Under *Mitchell*, a shifting-of-burden approach is taken wherein the plaintiff has the burden of proving that the defective design of the car was a substantial factor in causing the enhanced injury. Once that burden is borne by the plaintiff, the burden of proof then shifts to the tortfeasors to apportion the damages between them if they wish to do so. Under *Huddell*, the plaintiff retains the burden of proving not only the existence of enhanced injury, but the extent of the injury caused by the manufacturer's negligence. For the reasons which follow, we find the approach taken in *Mitchell* to be more consistent with Georgia tort law and to comport more closely with the public policies of this state.

We note first in that regard that *Mitchell* cites Georgia authority for the principle that wrongdoers who each play a substantial role in creating an indivisible harm are treated as joint and several tortfeasors. Id. at 1207, fn. 9. In *Mitchell v. Gilson*, 233 Ga. 453 (211 SE2d 744) (1975), this court affirmed the Court of Appeals' holding that where the acts of two or more tortfeasors join to create a single indivisible injury, i.e., the injury cannot be rationally apportioned between the tortfeasors, the tortfeasors will be treated as joint tortfeasors. *Gilson v. Mitchell*, 131 Ga. App. 321 (205 SE2d 421) (1974). It appears, therefore, that Georgia law had already moved in the direction later taken to its logical conclusion in *Mitchell v. Volkswagenwerk, A.G.*, supra. To take the next step and adopt the rule stated in *Mitchell v. Volkswagenwerk, A.G.* is only to continue the course set in *Gilson*, supra.

Another factor leading us to adopt the rule stated in *Mitchell v. Volkswagenwerk, A.G.* is its consistency with the Restatement Second of Torts, § 433A of which was quoted in *Gilson* to establish the joint liability of tortfeasors who produce indivisible injuries. Even more pertinent to the present case is § 433B (2), which directly addresses the subject of the Eleventh Circuit's question:

Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such ac-

tor.

In addition to the fact that the position taken in *Mitchell* is consistent with the development of Georgia tort law and with the principles of traditional tort law embodied in the Restatement Second of Torts, we note that a considerable number of other jurisdictions throughout the Southeast and throughout the country have, when called upon to decide this question, adopted positions consistent with *Mitchell* rather than *Huddell*.[1]

Also to be considered is the question of public policy. Adoption of the *Huddell* position takes away the incentive of automobile manufacturers to design their products in a responsible fashion. As the Supreme Court of Oklahoma noted, "application of the *Huddell* standard might impair the promotion of 'safer products' design . . . by weakening the deterrent value of products action." *Lee v. Volkswagen of America*, 688 P2d 1283, 1288 (S.C. Okla. 1984).

In summary, in deciding who should bear the burden of proving which facts in an enhanced injury or crashworthiness case, we find the approach in *Mitchell v. Volkswagenwerk, A.G.*, supra, to be the better approach in terms of honoring this state's own precedent, in terms of respect for traditional principles of tort law, in terms of sound legal reasoning, and in terms of public policy. Accordingly, we answer the question certified to us by the Eleventh Circuit as follows: In an en-

---

[1] Cases consistent with the *Mitchell* rule:

*Czarnecki v. Volkswagen of America*, 837 P2d 1143 (Ariz. App. 1992); *Blankenship v. General Motors Corp.*, 406 SE2d 781 (W.Va. 1991); *Doupnik v. General Motors Corp.*, 225 Cal.App.3d 849 (275 Cal. Rptr. 715) (3d Dist. 1991); *McDowell v. Kawasaki Motors Corp.*, 799 SW2d 854 (Mo. App. 1990) (see also *Richardson v. Volkswagenwerk, A.G.*, 552 FSupp. 73 (W.D. Mo. 1982)); *Tafoya v. Sears Roebuck & Co.*, 884 F2d 1330 (10th Cir. 1989) (Colorado); *Valk Manufacturing v. Rangaswamy*, 74 Md. App. 304 (537 A2d 622) (1988); *General Motors Corp. v. Edwards*, 482 S2d 1176 (Ala. S.Ct. 1985); *Shipp v. General Motors Corp.*, 750 F2d 418 (5th Cir. 1985) (Texas); *McLeod v. American Motors Corp.*, 723 F2d 830 (11th Cir. 1984) (Florida); *Fouche v. Chrysler Motors Corp.*, 107 Idaho 701 (692 P2d 345) (1984); *Lee v. Volkswagen of America*, 688 P2d 1283 (Okla. S.Ct. 1984); *Sumnicht v. Toyota Motor Sales, U.S.A.*, 121 Wis.2d 338 (360 NW2d 2) (1985); *Mitchell v. Volkswagenwerk, A.G.*, 669 F2d 1199 (8th Cir. 1982) (Minnesota); *Buehler v. Whalen*, 70 Ill.2d 51 (374 NE2d 460) (1977); *Chrysler Corp. v. Todorovich*, 580 P2d 1123 (Wyo. S.Ct. 1978) (see also *Harvey v. General Motors Corp.*, 873 F2d 1343 (10th Cir. 1989) (Wyoming)); *May v. Portland Jeep*, 265 Or. 307 (509 P2d 24) (1973); *Engberg v. Ford Motor Co.*, 205 NW2d 104 (S.D. S.Ct. 1973).

Cases consistent with the *Huddell* rule:

*Armstrong v. Lorino*, 580 S2d 528 (La. Ct. App. 1991); *Crispin v. Volkswagenwerk, A.G.*, 248 N.J. Super. 540 (591 A2d 966) (N.J. Super. Ct. App. Div. 1991) (see also *Huddell v. Levin*, 537 F2d 726 (3d Cir. 1976)); *Garcia v. Rivera*, 160 A.D.2d 274 (553 NYS2d 378) (App. Div. 1st Dept. 1990) (see also *Caiazzo v. Volkswagenwerk, A.G.*, 647 F2d 241 (2d Cir. 1981)); *Craigie v. General Motors Corp.*, 740 FSupp. 353 (E.D. Pa. 1990); *Duran v. General Motors Corp.*, 101 N.M. 742 (688 P2d 779) (N.M. App. 1983); *Wernimont v. Intl. Harvester Corp.*, 309 NW2d 137 (Iowa Ct. App. 1981); *Seese v. Volkswagenwerk, A.G.*, 648 F2d 833 (3d Cir. 1981); *Stonehocker v. General Motors Corp.*, 587 F2d 151 (4th Cir. 1978); *Dreisonstok v. Volkswagenwerk, A.G.*, 489 F2d 1066 (4th Cir. 1974).

hanced injury or crashworthiness case, Georgia law places on the plaintiff the burden of proving that a design defect was a substantial factor in producing damages over and above those which were probably caused as a result of the original impact or collision. To the extent that the injuries suffered by the plaintiff are indivisible, the defendants are treated as joint tortfeasors. Once the plaintiff's burden has been borne, the burden of proof shifts to the defendant which wishes to limit its liability to demonstrate a rational basis for apportioning the liability for the injuries.

*Question answered. All the Justices concur, except Bell, P. J., Hunt and Fletcher, JJ., who dissent.*

HUNT, Justice, dissenting.

I respectfully dissent because the majority's opinion is unsupportable. To the extent the majority purports to base its opinion on legal grounds, its analysis is illogical. To the extent it purports to base its decision on public policy, its analysis is equally flawed.

First, Georgia tort law, which is consistent with basic tort law, mandates a result opposite from that reached by the majority. The fundamental defect in the majority's reasoning is its treatment of this case as one involving joint tortfeasors. This is, clearly and simply, *not* a joint tortfeasor case. All parties agree that the initial tortfeasor, the drunk driver, is liable for *all* damages flowing from the initial collision,[2] including any which might have been caused by GMC. All parties agree that GMC and the initial tortfeasor are *not* joint tortfeasors. Rather, the plaintiff's claim against GMC is one of *enhancement*. All parties agree GMC is *only* liable to the extent any defect in the design of its car enhanced, or aggravated, the plaintiff's injuries over and above what would have occurred absent the alleged defect.

Both *Gilson v. Mitchell,* 131 Ga. App. 321 (205 SE2d 421) (1974), aff'd, 233 Ga. 453 (211 SE2d 744) (1975), and the Restatement 2d of Torts relied on by the majority are completely inapplicable to this case. Those authorities concern the law of joint tortfeasors, which all parties *agree* is not the situation here. The point of the Court of Appeals opinion in *Gilson*, affirmed by this court, was to clarify that concert of action is not necessary on the part of joint tortfeasors. In

---

[2] Courts and commentators sometimes have used the term "second collision" in addition to "crashworthiness," in discussing this type of case. See generally Levenstan & Lapp, Plaintiff's Burden Of Proving Enhanced Injury In Crashworthiness Cases: A Clash Worthy of Analysis, 38 DePaul Law Rev. 55 (1989). In general, "crashworthiness" means the protection that a passenger motor vehicle provides its passengers against injury or death as a result of a motor vehicle accident. "Second collision" has been used to refer to the collision between a passenger and the interior part of a vehicle after an initial impact, and to ejection cases in which the second collision is between the passenger and the ground. Id. at 56.

that case, the plaintiff claimed pain and mental suffering resulting from unnecessary medical procedures involving the insertion and removal of a catheter. *None* of the damages would have occurred *but for* the negligence of all three defendants involved. Here, however, Polston admits she would have been injured as a result of the drunk driver's negligence alone, and that some of her injuries cannot be attributed to GMC. *Gilson* addresses the circumstances presented here, and, in fact, requires the plaintiff prove all elements of her claim against GMC:

> If [two defendants] merely inflict separate wounds, and [plaintiff] survives, a basis for division exists, no matter how difficult the proof may be, and the torts are several.

Id. at 325.[3]

Likewise, the Restatement 2d of Torts, § 433 B, also relied on by the majority, has no applicability here. That section pertains to a debate among multiple tortfeasors to apportion the total harm among themselves. It has no bearing on the plaintiff's burden of proving enhanced injuries. Here there *is* no apportionment. The drunk driver is responsible for all Polston's injuries, and GMC is liable *only* for any *enhanced* injuries.[4]

Tort law generally, and that of our state, require the plaintiff to prove not only the existence and amount of his or her damages, but also a legally attributable *causal connection* between any act or omission by the defendant and the resulting injury. See *Anneewakee, Inc. v. Hall*, 196 Ga. App. 365, 367 (1) (396 SE2d 9) (1990). See also Prosser & Keaton on Torts, § 41, p. 269 (5th ed. 1984); Adams & Adams Georgia Law of Torts, §§ 3-1; 15-2 (1989); *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). Moreover, Georgia tort law is clear that a defendant is liable only for injuries caused by its acts or omissions. See *Orkin Exterminating Co. v. Dawn Food Prods.*, 186 Ga. App. 201, 202 (3) (366 SE2d 792) (1988). If the plaintiff cannot prove her enhanced injuries, she has failed to show the alleged defect aggravated, or enhanced her injuries. If she is unable to offer evidence of what would have occurred absent the alleged defects, she simply

---

[3] Interestingly, the federal district court judge in this case, Judge Hall, who rejected Polston's argument that *Gilson* applies here, is the very same judge who authored the *Gilson* opinion in the Georgia Court of Appeals.

[4] One commentator has aptly termed the issue presented in this case as one of the "false burden of proof." Hoenig, *Resolution of "Crashworthiness" Design Claims*, 55 St. John's Law Rev., 633, 699 (1981). Hoenig points out that apportionment in this type of case is "a basic conceptual error," Id., in the plaintiff's argument because there is *no* apportionment between the tortfeasors' responsibilities for her injuries. The correct basis of determining liability is enhancement, and apportionment or divisibility have no bearing here.

has not established enhancement. In that case, she has not proved her claim against GMC.

The precise rule applicable in a case such as this was stated in *Gay v. Piggly Wiggly*, 183 Ga. App. 175, 179 (358 SE2d 468) (1987):

> " 'It is true that [the original wrongdoer] could be held liable for the aggravation of the injury caused by the other defendants' negligence, but that liability is not the result of any concept of joint wrongs but is rather the product of the familiar rule that a wrongdoer is responsible for the reasonably foreseeable consequences of his tortious act, including the negligent conduct of others. Conversely, it would defy reason to hold the other defendants liable for injuries caused by the original wrongdoer which were not the consequences of their own carelessness. . . . ' "

Similarly, the correct and guiding principle to decide this case was stated in *Knight v. Lowrey*, 228 Ga. 452, 456 (185 SE2d 915) (1971) (language on other issues overruled in *Mitchell v. Gilson*, 233 Ga. 453, 455 (211 SE2d 744) (1975)):

> [I]t would defy reason to hold the [actor] liable for injuries caused by the original wrongdoer which were not the consequence of his own carelessness.

Second, the majority's public policy argument, and others proposed in support of the conclusion reached by the majority, prove to be, on any logical analysis, a house of cards. The majority states that its holding promotes auto manufacturers' incentive to design their products in a responsible fashion. However, there are, doubtless, proper claims by plaintiffs—i.e., those where plaintiffs can prove their claims against GMC, and similar auto manufacturers, under Georgia and traditional tort law—which serve, in today's litigious society, as more than adequate incentive for responsible design.

In my view, the only rational public policy argument in support of the majority's conclusion would be one based on the concept of insurance since, in effect, the majority's decision, and those of jurisdictions consistent with the majority opinion, makes GMC an insurer of the plaintiff's damages. This was the approach taken by the West Virginia Supreme Court of Appeals in *Blankenship v. General Motors Corp.*, 406 SE2d 781, 784-785 (W. Va. 1991). There, the court, based on economic data, held General Motors responsible for proving what, if any, damages were caused by its negligence: "General Motors is the largest producer of automobiles in the world . . . [and is] already collecting a product liability premium every time it sells a car any where in the world. . . ." Ironically, in terms of whether the

*Mitchell* or *Huddell* rule is preferable, the West Virginia Supreme Court agreed that

> the *Huddell* standard makes a great deal of sense and, perhaps, it should be the national standard in all crashworthiness cases. But it isn't. Therefore we reject the *Huddell* standard because West Virginians are not going to pay product liability insurance premiums so that all the residents of [other jurisdictions] . . . can collect the benefits.

This holding is based on the assumption that the manufacturer has insured itself against risk by the collection of premiums through cost increases in its product, *and* the burden of proving the extent of a plaintiff's enhanced injuries is a near impossible one. Id. at 784. However, from the record before us, we can make no such assumptions, either as to the economic analysis, or the availability of relevant expert testimony.

There is no justification in this case, on legal, or public policy grounds, for requiring the manufacturer to prove an essential element of the plaintiff's case.

I am authorized to state that Presiding Justice Bell and Justice Fletcher join in this dissent.

DECIDED DECEMBER 3, 1992 —
RECONSIDERATION DENIED DECEMBER 17, 1992.

*Ellerin & Associates, Irwin M. Ellerin, Heidi Koch, Frederic N. Halstrom,* for appellant.

*King & Spalding, Lanny B. Bridgers, Chilton D. Varner, Sandra E. Strippoli, Mark D. Johnson,* for appellees.

*Hardy Gregory, Jr., Foy R. Devine, James D. Hollingsworth, William S. Stone, Glen M. Darbyshire, John M. Hewson III,* amici curiae.