A94A1754. BRINKS, INC. v. ROBINSON.
(452 SE2d 788)

McMURRAY, Presiding Judge.

This is an action for damages arising from two motor vehicle collisions. Sheila Robinson (plaintiff) seeks damages for injuries arising from a collision in Columbus on December 31, 1990, between a vehicle in which she was a passenger and an armored truck operated by Brinks, Inc. ("Brinks"). Plaintiff also seeks damages for injuries suffered on April 29, 1991, when a car she was driving collided with a vehicle operated by defendant Cowling. The case was tried before a jury which returned a verdict in favor of plaintiff. The judgment provides that plaintiff recover $25,000 from defendant Cowling and $850,000 from defendant Brinks, plus interest and costs. Only the defendant Brinks has appealed. *Held:*

1. Brinks enumerates as error the trial court's joinder of parties defendant and claims against successive tortfeasors. Plaintiff's complaint alleges that Brinks and Cowling were joint tortfeasors because their actions combined to produce a single indivisible injury. See *Gilson v. Mitchell*, 131 Ga. App. 321 (205 SE2d 421), aff'd *Mitchell v. Gilson*, 233 Ga. 453 (211 SE2d 744). The trial court denied Brinks' motion to sever based upon misjoinder of parties and also denied

Cowling's motion to transfer for improper venue.

The Civil Practice Act provides for permissive joinder of parties and claims as follows: "All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief *in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences* and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given . . . against one or more of the defendants according to their respective liabilities." (Emphasis supplied.) OCGA § 9-11-20 (a). If they were joint tortfeasors, the defendants in this case could have properly been sued jointly despite their residing in different counties. Ga. Const. 1983, Art. VI, Sec. II, Par. VII.

However, these defendants were not joint, but successive tortfeasors. The defendants did not act in concert, the acts of negligence involved were separated by several months, and the plaintiff did not suffer an indivisible injury. Plaintiff having survived the separate wounds inflicted upon her, a basis for division exists and no matter how difficult the proof may be, the torts are several. *Posey v. Med. Center-West*, 257 Ga. 55, 56 (354 SE2d 417); *Knight v. Lowery*, 228 Ga. 452, 455 (185 SE2d 915); *Gay v. Piggly Wiggly Southern*, 183 Ga. App. 175, 178-181 (2, 3) (358 SE2d 468); *Phillips v. Tellis*, 181 Ga. App. 449, 450 (352 SE2d 630); *Gilson v. Mitchell*, 131 Ga. App. 321, 325, supra. The two separate accidents are insufficiently connected to constitute a "series of occurrences" giving rise to plaintiff's claims.

We cannot agree with the dissent's reliance on the Supreme Court's decision in *Polston v. Boomershine Pontiac-GMC Truck*, 262 Ga. 616 (423 SE2d 659) to find otherwise. As the dissent notes, defendants in a "crashworthiness" case are properly sued as joint tortfeasors in that one accident is conceptually comprised of two collisions: A vehicle initially collides with another vehicle, after which a plaintiff experiences a so-called "second collision" with the ground or with interior parts of his vehicle. The two collisions are inextricably linked in a "series of occurrences." Thus, unlike the case sub judice, in "crashworthiness" cases alleged negligence of a defendant manufacturer and a defendant driver converge at the time of a *single accident* so that they logically constitute a "series of occurrences" in satisfaction of the first prong of OCGA § 9-11-20 (a). Similarly, in *Gilson v. Mitchell*, 131 Ga. App. 321, supra, aff'd 233 Ga. 453, supra, cited by the Supreme Court in support of its analysis in *Polston* and by the dissent herein, separate acts of negligence by three doctors in connection with using a central venous pressure catheter in plaintiff's right external jugular vein during his hospitalization for stomach surgery converged in the harm of subjecting the plaintiff to unnecessary med-

ical procedures and mental distress, thus constituting a "series of occurrences." In the case sub judice, however, the plaintiff was involved in *separate* accidents four months apart involving different vehicles, and different circumstances. The alleged acts of negligence by Brinks and Cowling are not sufficiently connected to constitute a "series of occurrences" within the meaning of OCGA § 9-11-20 (a). To allow joinder of plaintiff's claims over objection by either defendant is to disregard the first requirement for permissive joinder. To force Brinks and Cowling to defend plaintiff's claims in a single action is to exceed the direction pointed by the Supreme Court in *Polston.* Indeed, such a holding would invite plaintiffs to join any number of disconnected and unrelated wrongdoers in one action by alleging that the "series" of alleged intentional or negligent acts caused them emotional distress, mental injury, or other intangible, "indivisible" harm.

The dissent reasons that improper joinder in this case has worked no harm to Brinks that would not necessarily recur at a second trial. However, "it is not essential for defendants to prove prejudice for if joinder is not authorized by the plain language of the statute, no amount of judicial economy can justify it." *Howard Motor Co. v. Swint,* 214 Ga. App. 682, 683 (448 SE2d 713); see also *Cincinnati Ins. Co. v. Reybitz,* 205 Ga. App. 174, 175 (1), 179 (c) (421 SE2d 767) ("goal of judicial economy cannot justify sacrificing the rights of the parties"). Plaintiff not having satisfied the first requirement for permissive joinder of parties under OCGA § 9-11-20 (a), she must bring separate actions against the successive tortfeasors. Accordingly, the trial court abused its discretion by denying Brinks' motion to sever plaintiff's claims for misjoinder of parties and as to defendant Brinks, we reverse. Compare *Vitner v. Funk,* 182 Ga. App. 39, 40 (1) (354 SE2d 666).

2. In light of our decision in Division 1, it is not necessary to address Brinks' enumeration that the court erred in instructing the jury to apportion damages as between joint tortfeasors in a personal injury action, and entered an illegal judgment on the jury's verdict. We address those evidentiary matters likely to recur on retrial of this case, however.

3. Brinks next argues the trial court erred in allowing plaintiff's treating chiropractor to offer an opinion as to which of the two collisions was responsible for the injury to her right hip and sacroiliac. " 'The question of whether a witness is qualified to give his opinion as an expert is one for the court. (Cit.) His determination will not be disturbed except that it be manifestly abused.' [Cits.]" *City of Fairburn v. Cook,* 188 Ga. App. 58, 67 (10) (372 SE2d 245).

The Supreme Court's decision in *Chandler Exterm. v. Morris,* 262 Ga. 257 (416 SE2d 277), cited by Brinks, does not control this issue. In that case the court held a psychologist was not qualified to

offer an opinion concerning the medical or organic causation of mental dysfunction. Here, the chiropractor's opinion concerned the relationship between his patient's symptoms and the relative impacts to which she had been subjected in two automobile collisions, a matter logically within his expertise. The chiropractor had treated numerous accident victims, had seen the plaintiff on some 50 visits and was thus competent to offer an opinion as to which impact caused the injury to her right hip and sacroiliac.

Brinks also argues the trial court erred when it questioned the chiropractor about his education and qualifications so as to bolster that witness' credibility. In response to Brinks' objection at the bench, however, the trial court explained to the jury that it had no opinion about the case or the witness' credibility and simply asked the questions so the jury might know the chiropractor's background. The final charge to the jury also included a curative instruction that "[n]othing that I do or say during the trial of this case was intended to hint, suggest, or somehow communicate to you in some way or another which party should prevail in this matter." "[I]n the absence of clear evidence to the contrary, qualified jurors, under oath, are presumed to follow the instructions and procedural directives of the trial court. [Cit.] . . . Nothing contained on the face of this record is so compellingly erroneous as to preclude the jury from following this curative instruction, and we note that [Brinks] entered no exception to the curative instruction at the conclusion of the court's charge." *Harris v. State*, 202 Ga. App. 618, 619 (3a), 620 (414 SE2d 919).

4. The trial court did not abuse its discretion in allowing one of plaintiff's treating psychologists to testify at trial upon one day's notice to Brinks when Brinks had the psychologist's office notes and was aware well before trial that she had treated the plaintiff in association with Dr. Falls, whose deposition testimony was read to the jury. *City of Monroe v. Jordan*, 201 Ga. App. 332, 335 (4), 336 (411 SE2d 511).

5. The trial court did not err in admitting, over Brinks' hearsay objection, the office notes of plaintiff's psychologist Dr. Falls containing observations and conclusions of his associate Dr. Angela Register, who did not testify at trial; and the clinical records from Capital Rehabilitation Hospital containing notes of a physical therapist who also was not called to testify at trial. Dr. Falls testified that based upon his examination of the plaintiff, he concurred in the opinions of Dr. Register and discussed with her all notations before they were entered in the clinical record. Dr. Falls signed and thus ratified each note in plaintiff's record. Since Brinks thoroughly cross-examined Dr. Falls as to the notes, the purpose of the rule against hearsay has been served.

"Although we may conclude that the admission of certain portions of these medical records was error, nevertheless, there was no error of magnitude to warrant reversal of the jury's verdict. At worst

the [physical therapist's] reports were merely cumulative and any error in admitting them was harmless. [Cit.]" *Pembrook Mgmt. v. Cossaboon*, 157 Ga. App. 675, 678 (4) (278 SE2d 100).

6. Brinks contends there was insufficient evidence for the jury to make an award of future lost earnings, and the court therefore erred in charging the jury on this aspect of the plaintiff's damages and the use of mortality tables to calculate such an award.

"[W]herever there is evidence of the pecuniary value of the plaintiff's earning capacity at the time of injury coupled with evidence of the nature and extent of the diminution of that capacity[,] the jury may arrive at a reasonable and just compensation for impairment of earning capacity. . . . Based on [such] evidence . . . , a jury may make an award as compensation for diminished earning capacity, whether or not the evidence establishes with any exactitude the lost future earnings." *Jones v. Hutchins*, 101 Ga. App. 141, 144 (2), 147 (113 SE2d 475). "In *Michaels v. Kroger Co.*, 172 Ga. App. 280 (322 SE2d 903) (1984), this court, relying on *Jones v. Hutchins*, supra, and on *Hunt v. Williams*, 104 Ga. App. 442 (122 SE2d 149) (1961), held at 286 that 'all future earnings or diminished future earnings are uncertain and difficult of ascertainment . . . , but this does not mean that a plaintiff should be denied a recovery. Prior decisional authority requires only that there must be evidence from which the jury can estimate, or reasonably infer the loss or decrease in earning capacity.' " *Walkley v. Dukes*, 175 Ga. App. 820, 823 (4), 824 (334 SE2d 868). In the case sub judice, the evidence showed that due to her injuries, the plaintiff had physical difficulty performing her current job as a Coats & Clark loomer, and had in fact been encouraged to seek other work. As the plaintiff testified, her lack of education limits her prospects for better-paying work, and her physical limitations now make it unlikely that she will find work paying as well as her current job. We find there was sufficient evidence in the record upon which the jury could base an award of future lost wages.

*Judgment reversed. Pope, C. J., Birdsong, P. J., Andrews, Johnson, Blackburn and Ruffin, JJ., concur. Beasley, P. J., concurs specially. Smith, J., dissents.*

BEASLEY, Presiding Judge, concurring specially.

I concur because the requirements for permissive joinder in this case were not present. In the words of OCGA § 9-11-20 (a), there was no "question of law or fact common" to both of the occurrences, four months apart, which arose so as to justify the joinder.

The alleged commonality was indivisibility of plaintiff's psychological injuries, a question of fact. There was no commonality in the injury which was to be tried, although there was evidence that the second occurrence exacerbated these injuries. That is shown by exam-

ining the record and confirmed by what transpired at trial. The evidence at trial from the medical experts was essentially the same as it was in the depositions and thus the separability was determinable before trial. Although plaintiff's treating neurologist deposed that he could not differentiate what was caused by one collision as opposed to the other, another of her treating physicians deposed and testified that her depression always led back to the first accident; in his deposition he testified that it seemed like "the epicenter of her affect" came from the first accident. He just could not divide up the portions. There was other pre-trial evidence that the injuries were separable from the outset. The point is that the pre-trial evidence of the psychological injury was that it was caused by the first incident and increased in severity or duration by the second. That does not make it "common" for the purpose of joinder.

At trial, plaintiff withdrew her request for a charge on joint liability for indivisible or non-apportionable damages. The court gave a charge only on apportionment; the jury was not instructed to consider joint liability. In instructing on possible verdicts, the court gave three options, and three options only, in the event the jury found in plaintiff's favor: against both defendants "and apportion the damages, that is the money, accordingly"; against one defendant in a certain amount; or against the other defendant in a certain amount. Joint liability was not an option. As instructed by the court, the verdict against each defendant was returned separately.[1]

Thus there was no reason to require Brinks to have its liability tried with that of Cowling because of a tenuous relationship between two disparate vehicular collisions, distanced by time and location and dissimilar in circumstances. Between them a relationship existed only by a thin thread of plaintiff's continuing depression. The jury had no discernible trouble apportioning the damages against the separate defendants. Indeed, the court had instructed that it should find against each defendant only for the amount the jury was "able to rationally apportion between the two defendants the extent of plaintiff's injuries caused by each defendant."

It was inconsistent to join the two defendants as "joint tortfeasors" when the jury was not to decide if there was any joint liability. For this reason I agree that it was an abuse of discretion to refuse severance.

To the extent that appellant must show prejudice before we require a new trial for it, Brinks has demonstrated that it was harmed

---

[1] This gives rise to the problem of the enforceability of the separate verdict against a non-resident defendant. *Motor Convoy v. Brannen*, 194 Ga. App. 795 (391 SE2d 671) (1990), aff'd 260 Ga. 340 (393 SE2d 262) (1990). Since Cowling did not appeal, that issue is not before us.

in a number of ways by the participation of Cowling and the presence of his evidence. Not only plaintiff but also Cowling was aligned against Brinks, and Cowling attempted to prove and argued that the *sole* cause of plaintiff's injuries and the *sole* defendant liable for recoverable damages was Brinks.

It is entitled to a trial as the sole defendant, with respect to the collision of December 31, 1990.

SMITH, Judge, dissenting.

I respectfully dissent, as I cannot agree with Division 1 of the majority opinion. The majority concludes joinder was improper because the defendants were not joint tortfeasors and "[t]he two separate accidents are insufficiently connected to constitute a 'series of occurrences' giving rise to plaintiff's claims."

No bright-line rule exists regarding permissive joinder, and in my view, this was an appropriate case for permissive joinder of the two defendants and the application of OCGA § 9-11-20 (a). Robinson's claims arose out of a "series of occurrences": a collision with a Brinks truck on December 31, 1990, and a collision with a vehicle driven by Brinks's co-defendant, Cowling, approximately four months later, in April 1991. From this series of occurrences, common questions of law and fact arose regarding the nature, extent, and causation of her injuries, the damages attributable to them, and which party or parties might be liable for them. The statute provides that in those circumstances, defendants may be joined and "[j]udgment may be given for one or more of the plaintiffs according to [the defendants'] respective liabilities." That is exactly what occurred here.

It is true that each independent claim must satisfy constitutional venue provisions. This need not be our concern, however, because the issue raised by the joinder was the trial court's jurisdiction over *Cowling*. Brinks was a "resident" of Muscogee County, and it admitted the court had jurisdiction over it. Brinks therefore has no standing to raise this issue. Cowling has not appealed the judgment against him, and thus this issue is not properly before us.

*Ryder Auto. Leasing Co. v. Tates*, 112 Ga. App. 18 (143 SE2d 411) (1965), is cited by Brinks as authority for its contention that it may raise this issue. This reliance upon *Ryder* is entirely misplaced. The *Ryder* court authorized a challenge to service on a co-defendant because in that case the appellant was a *non-resident* party and would have been entitled to remove the action to federal court if its co-defendant had not been served properly. That is obviously not the case here.

Further, even if joinder were improper, as urged by the majority, I cannot see any harm to Brinks resulting from the first trial that would not necessarily also recur at a second trial. Retrial as to Brinks

would necessarily take place in Muscogee County, the county of residence of Brinks, where the first trial was held. Evidentiary matters relating to the Cowling accident would have to be brought into the retrial because the plaintiff's doctors cannot separate the two accidents in terms of causation of plaintiff's injuries. A separate verdict against Brinks in a definite amount would be returned by the jury, just as it was in the first trial. This is *exactly* the result sought by Brinks in arguing for severance on the ground that it and Cowling were not joint tortfeasors.

The issue of whether the plaintiff's injuries are indivisible so as to render the defendants joint tortfeasors is immaterial here. The issue was explored by the trial court only insofar as it pertained to how the trial should proceed. The plaintiff suffered neck and back injuries, a permanent limp, and severe depression. Her treating psychologist testified both on deposition and at trial that he could not apportion between the two wrecks responsibility for the injuries he treated. Her neurologist testified similarly on deposition. Faced with this evidence that damages could not be apportioned rationally, the trial court allowed a joint trial to proceed, taking the position that although some of the plaintiff's injuries may have been apportionable, at least her mental injuries were indivisible and incapable of apportionment. At trial, Brinks offered the testimony of a psychologist that he was able, on a rational basis, to apportion the plaintiff's mental injuries. The jury returned a verdict apportioning damages between the defendants.

In my view, the approach taken by the trial court was both fair and correct. It also appears to me to be in harmony with and analogous to the procedure recently prescribed by the Georgia Supreme Court in *Polston v. Boomershine Pontiac-GMC Truck*, 262 Ga. 616 (423 SE2d 659) (1992), dealing with a similar issue involving crashworthiness and enhanced injuries, in which a similar question was contested.[2] In *Polston*, the plaintiff was severely injured in an automobile crash and brought suit against the driver of the other car. She also sued several car dealers and the car's manufacturer, alleging that the design of her car enhanced her injuries. Responding to a certified question from the Eleventh Circuit regarding the burden of proving apportionment of damages among the defendants, the Supreme Court held that the plaintiff bears the initial burden of proving a prima facie case, at which point the burden "shifts to the defendant

---

[2] The Supreme Court noted that "crashworthiness" cases are often referred to as "second collision" cases, to refer to the passenger's collision either with interior parts of the vehicle or with the ground, after the initial impact with another vehicle. *Polston*, supra at 619, n. 2. This interesting aside demonstrates graphically the factual similarities between *Polston* and cases such as this, involving actual second collisions.

which wishes to limit its liability to demonstrate a rational basis for apportioning the liability for the injuries." Id. at 619.

*Polston* indicates recognition that situations arise in which the question of the indivisibility of the injuries to the plaintiff is exactly the point in issue. In reaching its conclusion in *Polston*, the Supreme Court drew on the Restatement Second of Torts and case law from other jurisdictions. The court also noted that prior Georgia decisions, including *Gilson v. Mitchell*, 131 Ga. App. 321 (205 SE2d 421) (1974), aff'd 233 Ga. 453 (211 SE2d 744) (1975), indicate that Georgia law had long been moving toward and pointing in the direction taken in *Polston*. I believe the trial court in this case read those sign posts correctly, and it approached this difficult issue with fairness and common sense.

Since I agree with the majority that none of Brinks's other enumerations has merit, I would affirm the judgment in this case.

DECIDED DECEMBER 5, 1994 —
RECONSIDERATION DENIED DECEMBER 20, 1994 — 

*Self, Mullins, Robinson & Marchetti, Richard A. Marchetti,* for appellant.

*Charles A. Gower, Denney, Pease, Allison, Kirk & Lomax, John W. Denney, Taylor & Harp, Jefferson C. Callier,* for appellee.