## A04A2117. OWENS et al. v. GENERAL MOTORS CORPORATION.
### (613 SE2d 651)

BARNES, Judge.

James Owens sued Paul Edward Nelkie and General Motors Corporation ("GM") after Owens wrecked his GM truck, alleging that Nelkie's negligence caused the wreck and GM's defective seat belt and air bags caused Owens to suffer extensive injuries. Patsy Owens also sued for loss of consortium. Owens subsequently dismissed Nelkie from the suit with prejudice, and GM moved for summary judgment. The company argued that Owens failed to present "qualified" expert testimony regarding the existence of a manufacturing or design defect, and failed to present expert testimony about the proximate cause of Owens' enhanced injuries. The trial court granted the motion, and the Owenses appealed. For the reasons that follow, we affirm the trial court's grant of summary judgment to GM on Owens' claims of negligence, fraudulent concealment, breach of warranties, and punitive damages, but reverse the trial court's grant of summary judgment on Owens' strict liability claim.

In this case, Owens contended that, because his seat belt did not lock and his air bag did not inflate, he hit his dashboard and windshield. If these safety features had worked, he contended, he would not have suffered any significant injuries, but their failure to function along with the other driver's negligence proximately caused his injuries. Owens sued GM for negligence, strict liability, fraudulent concealment, breach of warranties, and punitive damages. Mrs. Owens sued for loss of consortium. Owens appeals only the trial court's summary judgment grant on his strict liability and negligence claims.

A collision repair technician certified in passenger restraint systems testified that he had been working on vehicles for 21 years,

and had attended numerous classes about seat belts and air bags. He repaired Owens' vehicle, a brand new black 1996 GM Sierra truck with about 200 miles on it, and noted that someone from GM came out to his shop twice to check the truck's air bag. The technician said that the steering wheel had folded over at the top and the rearview mirror had hair in it where Owens' head had struck it. In his opinion, both the seat belt and the air bag systems were defective. When the truck came to his shop, the seat belt was unwound and lying stretched out over the seat. After explaining how the locking mechanism in seat belt restraint systems deployed when the nose of a car dipped forward, the technician demonstrated that the seat belt mechanism from Owens' truck did not lock properly. In his opinion, this seat belt system was defective.

The technician then discussed the operation of the air bag system, about which he had taken several technical courses. He explained that inside the sensor unit is a detonator. "It takes so many g forces for that detonator to go forward to hit the other end of the sensor to make the circuit complete to blow the bag." The right side frame rail was damaged in the collision, and it was "at the end of this bracket that welds to the frame that your air bag sensor mounts to. There's a faulty weld where the bracket mounts. The weld broke." He noted that the sensor wires were "skint" where the radiator scraped across the sensor. In his opinion, when the weld broke, the g force did not transfer to the air bag sensors and thus the bag did not detonate. The owner of the repair shop where the technician worked also testified that the air bag bracket tore loose from the frame, and the air bag did not go off.

Owens' family doctor testified that he first saw Owens eight days after the wreck. He determined whether Owens had been wearing his seat belt, "because that normally makes a difference in the extent of the injuries," and Owens had suffered trauma to the nasal bridge between his eyes, along with ankle pain. A week later Owens returned in an "altered mental state," and the physician ordered him to undergo a CT scan of his head and chest, and an x-ray of his ankle. These tests revealed a mild concussion and a fractured ankle, which the physician thought tipped Owens into a state of depression and post-traumatic stress syndrome. Two years after the wreck, after numerous bouts of eye infections and swelling, another CT scan showed Owens had fractured his nose at the location he claimed was painful after the wreck. The fracture blocked the tear duct in one eye, which an ophthalmological surgeon opened, and the problem resolved.

Patsy Owens testified that her husband broke his glasses and had a black eye, a knot on his head, and a bruised sternum. She had noticed that the seat belt did not catch when she drove the truck

before the wreck, but that it did now that it had been replaced. She also said that she and her husband were suing GM because the truck's seat belt "failed to do what it said it was going to do. You think a seat belt will protect you. It failed to do that. An air bag is supposed to help you if you are in an accident, and it failed to come out."

James Owens also testified that, before the wreck, the seat belt did not lock when he braked hard, although it now did. The truck manual said the air bag should go off upon an impact of 15 mph or more, but it did not deploy during this wreck. He explained that the wreck occurred on a two-lane road when he passed a car driving 25 mph in a 45-mph zone. When he pulled back into his lane in front of the slow-moving car, the Ford truck ahead of him locked down its brakes. He attempted to avoid hitting the Ford but was unsuccessful. Owens said he never felt any tension in the shoulder belt, and his head "flew back" and then bounced forward into the rearview mirror, which broke off, and the windshield. His sternum hit the wheel and his left foot broke when it slipped off of the brake. Afterward, he said, the other driver jumped out and said, "I will teach you a lesson about driving behind anybody too close . . . ," then followed that statement with several obscenities. Owens had a cracked sternum, a black eye, and knots on his head, and complained of short-term memory loss. Finally, he said that the air bag did not work, its sensor wires were scraped, and the seat belt "did not hold me one bit." He responded negatively when asked, "If the air bag had deployed, had gone off and if the seat belt had held you as you say it should have, do you think you would have had any injuries in this accident?"

1. On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Preferred Real Estate Equities v. Housing Systems*, 248 Ga. App. 745 (548 SE2d 646) (2001).

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to

specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).

(Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Further, when ruling on a motion for summary judgment, a court must give the opposing party the benefit of all reasonable doubt, and the evidence and all inferences and conclusions therefrom must be construed most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988). On motions for summary judgment, however, courts cannot resolve the facts or reconcile the issues. *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

Owens argues that the trial court erred in granting summary judgment to GM on all of his counts: negligence, strict liability, fraudulent concealment, breach of warranties, and punitive damages. While the trial court did not explain its reasoning, Owens contends that he presented sufficient evidence to establish factual issues for the jury as to his claim that his truck's safety systems were defective and that he suffered greater injuries from that defect than he otherwise would have suffered had the systems worked properly.

2. The trial court erred in granting summary judgment to GM on Owens' strict liability claim. Georgia's strict liability statute, OCGA § 51-1-11 (b) (1), provides:

> The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

As this court recently stated,

> Under this statute, the plaintiff is not required to show negligence by the manufacturer, but must show that the product, when sold, was not merchantable and reasonably suited to the use intended and its condition when sold is the proximate cause of the injury sustained. It is not necessary

for the plaintiff to specify precisely the nature of the defect. He must show that the device did not operate as intended and this was the proximate cause of his injuries.

(Citation and punctuation omitted.) *Williams v. American Med. Systems*, 248 Ga. App. 682, 683 (1) (548 SE2d 371) (2001).

(a) In this case, the repair technician who fixed the truck after the wreck testified in detail about how the air bags were supposed to deploy. While he could not testify about the specific engineering of this air bag's sensor, he had studied the subject enough to know how it worked and how this sensor failed when the weld attaching it to the frame broke. He also testified that the seat belt would not catch, and even demonstrated that fact at his deposition. While GM's selective quotes from the technician's deposition testimony sound persuasive when considered out of context, a fair reading of the complete testimony reveals that the technician amply demonstrated what, in his opinion, was wrong with the seat belt and air bag system. Further, while the company asserts in its brief that the technician "failed to opine that any component of the belt and bag system was defectively manufactured," the witness did opine that neither the seat belt nor the air bag sensor worked properly.

> [A]lthough the witnesses were presented as experts, it was apparent that their testimony did not deal with scientific principles but with observation and comparison of physical objects, with matters not of science but of skill and experience. See OCGA § 24-9-67. This issue is comparable to that addressed by the Court of Appeals in *Hawkins v. State*, 223 Ga. App. 34 (1) (476 SE2d 803) (1996). There, the Court of Appeals held that although the horizontal gaze nystagmus test was subject to the *Harper* standard [that a given scientific principle or technique may be verified with such certainty that it is competent evidence in a court of law], basic sobriety tests such as the "ABCs," "walk and turn," and "leg lift" are physical dexterity exercises that common sense, common experience, and the "laws of nature" show are performed less well after drinking alcohol.

(Punctuation omitted.) *Belton v. State*, 270 Ga. 671, 674 (4) (512 SE2d 614) (1999). Similarly, whether a seat belt engaged properly or an air bag deployed are not issues requiring the expert testimony of an engineer or a metallurgist, but are "matters not of science but of skill and experience." Id.

(b) The second requirement to establish a factual issue in a strict liability claim is that the defect must be the proximate cause of the

injury. Owens argues that he presented sufficient evidence to establish factual issues for the jury as to his claim that he suffered greater injuries from the defective air bag and seat belt than he otherwise would have suffered had the systems worked properly. The repair technician testified that the rearview mirror had been knocked off the windshield and had hair stuck to it, and further testified that the steering wheel was "folded over." Patsy Owens testified that James broke his glasses, had a black eye, a knot on his head, and a bruised sternum. Owens testified that he hit the mirror, the windshield, and the steering wheel because his seat belt did not catch and his air bag did not deploy. Finally, Owens' treating physician testified that Owens suffered a nasal fracture where he complained of pain after the wreck, which blocked his tear duct and caused swelling and infection until it was corrected surgically. As with the issue regarding whether the seat belt and air bag were defective, whether someone suffers greater injuries in a car wreck when his seat belt does not work to restrain him and his air bag does not inflate between him and the mirror, windshield and steering wheel are not issues requiring the expert testimony of trauma physician or engineer, but are "matters not of science but of skill and experience." See *Belton v. State*, supra, 270 Ga. at 674.

GM contends that the issue of the proximate cause of enhanced injuries is reserved for expert opinion, citing two factually distinct cases in which expert opinion was necessary to determine which factors contributed to an injury. In *Maddox v. Houston County Hosp. Auth.*, 158 Ga. App. 283 (279 SE2d 732) (1981), a man was taken to jail, then to the hospital, then back to jail, then back to the hospital, where he died within minutes. The death certificate listed the cause of death as acute alcoholism with four contributing factors, and this court concluded that the plaintiff did not produce any "evidence of any causal connection between the actions taken by the hospital and Maddox's death, or that his death could have been avoided." Id. at 284.

In *Parrott v. Chatham County Hosp. Auth.*, 145 Ga. App. 113 (243 SE2d 269) (1978), a medical malpractice case, the plaintiff sued the hospital for failing to diagnose immediately his depressed skull fracture, which, while not causing any permanent disability, caused him an additional six days of pain and suffering. In affirming the trial court's grant of a directed verdict to the defendant, this court held, "[A] plaintiff cannot recover for malpractice where there is not sufficient evidence that such physician's alleged failure to use the requisite degree of skill and diligence in treatment either proximately caused or contributed to cause plaintiff additional suffering." (Emphasis omitted.) Id. at 115-116. Owens' injuries in this case do not

require expert testimony to determine whether they were proximately caused by defects in the seat belt and air bag, because jurors can determine from their own experience whether he would have struck the mirror, windshield and steering wheel if his seat belt had engaged and his air bag deployed.

GM complains that Owens never proved the extent of his "enhanced injury" caused by the failure of the air bag or seat belt, citing *Polston v. Boomershine Pontiac-GMC Truck*, 262 Ga. 616 (423 SE2d 659) (1992). "*Polston* holds that once the plaintiff has proved the existence of an injury-enhancing defect, the burden falls on the defendant to prove the degree of injury attributable to other causes. 262 Ga. at 618-619. The burden fell upon [GM], not plaintiffs, to show the extent of injury not caused by the failure of the air bag." (Emphasis omitted.) *Ford Motor Co. v. Tippins*, 225 Ga. App. 128, 131 (4) (483 SE2d 121) (1997) (physical precedent only).[1] The case before us is not a design defect case, as Owens makes no contention that the *design* of the seat belt and air bag were defective, only that their *manufacturing* was defective. Thus GM was strictly liable and *Polston* does not apply. See *John Crane, Inc. v. Jones*, 278 Ga. 747, 749 (604 SE2d 822) (2004).

3. Owens has not, however, presented sufficient evidence to withstand summary judgment on his negligence claim. While the evidence here may have been sufficient to establish that an inherent defect in the seat belt and air bag sensor caused them not to work, which is enough to prove a strict liability claim, Owens did not demonstrate that the defect was the result of any negligence by GM. *Williams v. American Med. Systems*, supra, 248 Ga. App. at 684. In our view, the witnesses'

> conclusions establish the existence of an inherent defect in the [seat belt and air bag], nothing more. They do not demonstrate that the defect was the result of any negligence on the part of defendant [GM]. A defect in a machine can arise for any number of reasons. This is not a case of "clear and palpable" negligence. The mere fact that the [seat belt and air bag] had an "inherent defect" does not demonstrate negligence on the part of defendant [GM]. See generally *H. Elton Thompson & Assoc., P.C. v. Williams*, 164 Ga. App. 571, 573 (298 SE2d 539) [(1982)] (defects in implementation of

---

[1] "A judgment in which all judges of the Division fully concur is a binding precedent; if there is a special concurrence without a statement of agreement with all that is said in the opinion or a concurrence in the judgment only, the opinion is a physical precedent only." Court of Appeals Rule 33 (2005).

erosion control plan not necessarily result of negligence on the part of the architect).

*Home Ins. Co. v. Caterpillar*, 202 Ga. App. 522, 523 (414 SE2d 735) (1992) (fire in front end loader's engine not necessarily result of negligent manufacturing).

Accordingly, the trial court did not err in granting summary judgment to GM on Owens' negligence claim.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Mikell, J., concur.*

## ON MOTION FOR RECONSIDERATION.

GM has moved us to reconsider our opinion in light of the passage of OCGA § 24-9-67.1, which addresses the admissibility of expert testimony, among other things. The statute provides that it is effective immediately and applies to all "pending cases." Because the trial court has not had an opportunity to rule on this issue, and because we are returning this case to the trial court for further proceedings, GM's motion for reconsideration is hereby denied.

*Motion for reconsideration denied.*

DECIDED MARCH 17, 2005 —
RECONSIDERATION DENIED APRIL 14, 2005.

*Michael S. Webb*, for appellants.
*King & Spalding, Robert D. Hays, Jr., Halli D. Cohn, Jason Wenker*, for appellee.